IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTOPHER CLEVELAND,      )
     )
        Petitioner,      )
     )
v.      )     Case No. CIV-12-86-F
     )
KAMERRON HAVANEK, Warden,      )
     )
        Respondent.      )

**<u>REPORT AND RECOMMENDATION</u>**

The State of Oklahoma charged Christopher Cleveland with abuse of two children. He pled nolo contendere, and the trial court accepted the plea. He sought leave to withdraw the plea and, when these efforts proved fruitless, he sought a writ of habeas corpus in federal district court. This petition raises five issues:

- Was the plea knowing and voluntary? (Ground One)

- Did Mr. Cleveland obtain notice of the elements of child abuse? (Ground Four)

- Is the Petitioner procedurally barred from obtaining habeas relief based on his attorney's conflict of interest? (Ground Two)

- Did the State show a factual basis for the no-contest plea? (Ground Five)

- Did the Petitioner fail to show ineffectiveness on the part of his trial counsel? (Ground Three)

The answer to each question is *yes*. The plea was knowing and voluntary, Mr. Cleveland obtained notice of the elements, the State supplied a factual basis for the plea, and he has not shown that his trial attorney was ineffective. The additional claim, which involved

a conflict on the part of the attorney, is procedurally barred.  Thus, the petition should be denied.

I.     Standard for Consideration of Habeas Relief

The Court can grant habeas relief "on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(a) (2006).  The applicable standard for review of a habeas petition turns on how the state appellate court had treated the underlying issues.

When the state appellate court does not address the merits, the federal district court exercises its independent judgment.  *See, e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).  When the court does so, the petitioner must demonstrate his right to habeas relief by a preponderance of the evidence.  *See Beeler v. Crouse*, 332 F.2d 783 (10th Cir. 1964) (*per curiam*).

If the state appeals court denied the claim on the merits, the federal district court bears a "secondary and limited" role.  *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998) (citation omitted).

For example, when factual allegations are involved, a federal court can grant habeas relief only if the state court had made "an unreasonable determination of the facts in light of the evidence presented."  AEDPA, 28 U.S.C. § 2254(d)(2) (2006).

The federal district court also engages in limited scrutiny of legal determinations when the state's highest court has addressed the merits.  In these circumstances, the federal court considers the record presented in state court[1] and determines whether the conclusions of the state appeals court were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[2]

The threshold issue is whether federal law clearly establishes the constitutional protection underlying the petitioner's claim.  "A legal principle is 'clearly established' . . . only when it is embodied in a holding of [the Supreme] Court."  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173 (2010) (citations omitted).  For this purpose, Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings."  *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).  In the absence of Supreme Court precedent, "a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law."  *Id*. at 1017 (citation omitted).

If the underlying constitutional right is clearly established, the federal district court must ask whether the state court decision was contrary to Supreme Court precedent.  *See Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008).  These circumstances may exist when the state court had:

---

[1]  *See Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

[2]  AEDPA, 28 U.S.C. § 2254(d)(1) (2006).

- applied a rule that conflicted with governing Supreme Court holdings or

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (citation omitted).

If these circumstances are absent, the federal district court must determine whether the state court decision involved an unreasonable application of Supreme Court precedent. *See Hicks v. Franklin*, 546 F.3d at 1283. Application of Supreme Court precedent is considered "unreasonable" when the state court unreasonably extends, or refuses to extend, prior decisions. *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

II.   <u>Ground One: Challenge to the Voluntariness of the Guilty Plea</u>

In his first ground, the Petitioner alleges that his plea was not knowing or voluntary because:

- his trial counsel said that entry of a plea of nolo contendere would "help get his children back" and

- he did not understand that he would need to serve at least 85% of the sentence before he would become eligible for parole.[3]

The state appeals court rejected the contention,[4] and this determination was reasonable based on the evidence and Supreme Court precedent.

---

[3]   *See* Okla. Stat. tit. 21 § 13.1 (2011).

[4]   (*Cleveland v. State*, Case No. C-2009-1034, slip op. at 2-3 (Okla. Crim. App. Dec. 2, 2010) (unpublished op.).)

A.     Constitutional Test for Validity of the Plea

The Supreme Court holds that guilty pleas are constitutionally valid only if they are knowing and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The Court has not squarely applied these requirements to pleas of nolo contendere. However, nolo pleas and guilty pleas are equivalent in Oklahoma. *See Burnham v. State*, 43 P.3d 387, 389 n.1 (Okla. Crim. App. 2002) ("The Court has established that a plea of nolo contendere is the functional equivalent of a plea of guilty."). Thus, the constitutional test is the same for both pleas.[5] That test required Mr. Cleveland to understand the charges and the nature of the rights being given up through a plea of nolo contendere. *See Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996).

B.     The Petitioner's Arguments

The Petitioner does not suggest that the state appeals court had contradicted or misapplied a Supreme Court precedent. Instead, he argues that the state court had misapplied the evidence of his confusion about the effect of his plea on future efforts to regain custody and the impact of the state's "85% rule."

Applicability of the 85% Rule

These arguments require the Court to consider whether the state appeals court had reasonably assessed Mr. Cleveland's understanding of the "85% rule."

---

[5]     *See Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (defining the test for the validity of a plea of guilty or no contest).

5

This rule states that in Oklahoma, offenders convicted of certain crimes must serve at least 85% of their sentences even if they would otherwise be eligible for parole.[6]  Mr. Cleveland argues that he didn't think the crime of child abuse was subject to that rule.  The contrary conclusion of the state appeals court was reasonable under the state court record.

Before Mr. Cleveland entered a plea, the judge asked the prosecutor about the applicability of the 85% rule.  The prosecutor answered that the crime was an "85-percenter." (Tr. of Pleas of Nolo Contendere 4.)  The judge explained to Mr. Cleveland:

> What that means is that the crimes carry up to 85 percent, which means that if you are later accelerated, which means if you get in trouble again or if you do this again, if you are accelerated to a prison sentence, you would have to do 85 percent of the sentence imposed.

(*Id.* at 5.)  The judge asked Mr. Cleveland if he understood, and he answered that he did. (*Id.*)  From this excerpt, the state appeals court could reasonably find that Mr. Cleveland was aware of the need to serve 85% of the sentence.

<u>Regaining Parental Rights</u>

Mr. Cleveland argues not only that he was unaware of the need to serve 85% of the sentence, but also that he thought the plea would help him regain parental rights for two of his children.  This argument should be rejected.

---

[6]     *See Skinner v. State*, 210 P.3d 840, 854-55 (Okla. Crim. App. 2009) (stating that the "85% rule" provides that "persons convicted of crimes enumerated in 21 O.S., § 13.1 are required to serve at least 85% of their sentences before they can even be considered for parole" (footnote omitted)); Okla. Stat. tit. 21 § 12.1 (2011) (stating that persons convicted of crimes listed in Okla. Stat. tit. 21 § 13.1 are ineligible for a sentence reduction based on credits until they have served at least 85% of the sentence).

The argument is based solely on Mr. Cleveland's testimony at a hearing on his application for leave to withdraw the plea.  He had obtained a deferred sentence of five years and the court accelerated the sentencing based on perjury charges.  Mr. Cleveland then testified that he had been told that with a nolo plea, the court could eventually expunge the record and the expungement could help him get his children back.  (Tr. of Def.'s Req. to Withdraw Orig. Pleas of Nolo Contendere 7.)  Having heard this testimony, the state trial judge found that Mr. Cleveland's plea was knowing and voluntary.  (*Id.* at 13-14.)  The state appeals court upheld this finding, stating that it was within the trial judge's discretion. (*Cleveland v. State*, Case No. C-2009-1034, slip op. at 2-3 (Okla. Crim. App. Dec. 2, 2010) (unpublished op.).)  The appellate court's finding was reasonable based on the evidence.

The Petitioner's argument appears to assume that the attorney had been mistaken because a nolo plea would not have helped him get his children back.  The Court is not sure why Mr. Cleveland assumes that the advice was misleading.

Under Oklahoma law, a court could have taken Mr. Cleveland's parental rights if:

- it were to find him guilty of child abuse or

- another court had already convicted him of such abuse.

*See* Okla. Stat. tit. 10A § 1-4-904(B)(8)(d), (9) (2011).

The agreement for a nolo plea involved a deferred sentence.  (Plea of Guilty & Summ. of Facts 3.)  "[A] 'deferred sentence' . . . is very favorable to a criminal defendant." *Hammon v. Ward*, 466 F.3d 919, 923 n.4 (10th Cir. 2006).  If Mr. Cleveland had complied

with the terms of the deferred sentence, the charge would have been dismissed with prejudice and the plea would have been expunged.  *See* Okla. Stat. tit. 22 § 991c(C) (2011).

When Mr. Cleveland pled nolo contendere, his parental rights had already been terminated for four of his children.[7]  A subsequent conviction would have eliminated any conceivable hope of regaining parental rights.  Perhaps with a deferred sentence, he still would have had little chance.  But an attorney could reasonably view the deferred sentence (made possible only through a nolo plea) as beneficial in future proceedings to regain parental rights.[8]  In these circumstances, the state appeals court viewed the evidence in a reasonable manner when it held that the nolo plea was knowing and voluntary even if his trial counsel had suggested that the plea would help him regain parental rights.

III.   Ground Four:  Elements of the Offense Charged

The Petitioner also claims that the trial court did not identify the elements of the crimes.  For the sake of argument, the federal district court can assume that it should apply

---

[7]     *See In re H.T.*, 276 P.3d 1054, 1056 (Okla. Civ. App. 2011) (stating that Mr. Cleveland's parental rights had already been terminated for four children), *cert. dismissed* (Okla. Apr. 16, 2012), *petition for cert. filed* (U.S. July 11, 2012) (No. 12-5340).

[8]     *See Michigan v. Oliver*, 360 N.W.2d 290, 291 (Mich. App. 1984) (*per curiam*) (concluding that the defendant had a legitimate reason to plead nolo contendere on a charge involving attempted kidnaping of his child based on a desire to avoid use of a guilty plea in future matters relating to child custody); *Vaughn v. Stafford*, 702 S.E.2d 761, 763 (Ga. Ct. App. 2010) (holding that the court could not consider a plea of nolo contendere on a charge involving child cruelty as a ground to modify a child custody award); *see also Doe v. Department of Health & Rehabilitative Services*, 563 So. 2d 655, 693 (Fla. Ct. App. 1990) (Zehmer, J., dissenting) (stating that the court could not rely on a plea of nolo contendere on a charge of child abuse to terminate parental rights because the plea did not constitute an admission of intentional abuse).

its independent judgment on the claim.[9]  Even with this assumption, the claim would be invalid.

The Supreme Court has held that a guilty plea is valid only if it is knowing and voluntary.  *See supra* p. 5.  "Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid."  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citing *Henderson v. Morgan*, 426 U.S. 637 (1976)).

To prevail, Mr. Cleveland must: (1) show that neither the court nor his attorney had identified the elements of child abuse, (2) overcome the presumption that counsel had explained the elements prior to the guilty plea, and (3) demonstrate a lack of notice regarding the elements from other sources.[10]

The elements of child abuse are:

---

[9]      The state appeals court rejected the claim based on the existence of a factual basis for the plea.  (*Cleveland v. State*, Case No. C-2009-1034, slip op. at 3 (Okla. Crim. App. Dec. 2, 2010) (unpublished op.).)  The federal district court need not decide whether the state court's rationale was contrary to, or an unreasonable application of, clearly-established federal law.  Even if the state court decision had deviated from clearly-established federal law, the habeas court would need to independently determine whether the petitioner had shown a right to relief.  *See Horn v. Banks*, 536 U.S. 266, 272 (2002) (*per curiam*) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review set forth in 28 U.S.C. § 2254(d), . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard" (citation omitted)); *see also Green v. Palakovich*, 606 F.3d 85, 100 (3d Cir. 2010) (stating that "[*Horn v. Banks*] recognized that satisfaction of § 2254(d) is the *minimum* required for a petitioner to receive habeas relief"), *aff'd*, __ U.S. __, 132 S. Ct. 38 (2011).

[10]     *See Miller v. Champion*, 161 F.3d 1249, 1255 (10th Cir. 1998) (identifying the three elements of a claim involving involuntariness of a guilty plea based on lack of notice regarding the elements of the crime).

- wilful or malicious engagement in

- the infliction of injury, torture, or maiming of

- a child younger than 18.

OUJI-CR 4-35 (2d ed).

The Petitioner does not deny that he had known: (1) the abuse had to be wilful or malicious, (2) the conduct had to result in an injury, and (3) the victim had to be under 18. Indeed, Mr. Cleveland had already sat through a preliminary hearing. (Prelim. Hr'g Tr. 3.) And before Mr. Cleveland pled no contest, he had acknowledged receipt of the Information and knowledge of the charge. (Tr. of Pleas of Nolo Contendere 4.)

Mr. Cleveland has not shown by a preponderance of the evidence that he was unaware of the elements. In the habeas petition, he asserted that he didn't know the "elements of the crime charged." (Am. Pet. 12.) But, he doesn't suggest that he was unaware of the State's burden of proof or the need to prove the wilful or malicious infliction of injury to a child under 18 years old.

A similar issue arose in *Allen v. Mullin*, 368 F.3d 1220 (10th Cir. 2004). There an Oklahoma prisoner challenged the constitutionality of a guilty plea on grounds that his attorney had failed to explain the intent element for his offense. *See Allen v. Mullin*, 368 F.3d 1220, 1241 (10th Cir. 2004). The Tenth Circuit Court of Appeals rejected the habeas claim in part because the petitioner had failed to demonstrate a lack of notice on the intent element from sources other than his counsel. *Id*. at 1243-44. The court relied on:

- the petitioner's receipt of a copy of his Information, which set forth the elements of the charged offense and

- his attendance at the preliminary hearing, which included testimony on the intent element.

*Id.* at 1244.  With these facts, the appeals court reasoned that the petitioner was able to infer the deliberate nature of the underlying offense.  *Id.*  The court regarded the petitioner's statements in the plea hearing (acknowledging that his plea was knowing and voluntary) as confirmation that he had understood the intent element.  *Id.*

*Allen* dictates rejection of Mr. Cleveland's habeas claim.  Like the petitioner in *Allen*, Mr. Cleveland acknowledged receipt of the Information and he too sat through his preliminary hearing.  The Information restated the elements of child abuse by alleging that "Christopher Cleveland [had] wilfully or maliciously injured, tortured, maimed or used unreasonable force upon a child under the age of eighteen (18) years of age." (R. at 1.)  And at the preliminary hearing, three witnesses described Mr. Cleveland's violence against the two children.  (Prelim. Hr'g Tr. 3-32.)  Unlike the petitioner in *Allen*, Mr. Cleveland does not deny an understanding of the elements.  Without such an allegation, the Petitioner has failed to demonstrate by a preponderance of the evidence that he had lacked an adequate understanding of the three elements of child abuse.  Thus, this claim should be rejected.

IV.   Ground Two:  Ineffective Assistance of Trial Counsel Due to a Conflict of Interest

The Petitioner claims in Ground Two that his trial counsel was ineffective based on a conflict of interest.  According to Mr. Cleveland, the conflict existed because his trial

attorneys had jointly represented his wife, who was a codefendant.   This claim is procedurally barred.

A habeas claim is generally subject to procedural default when the state court declines to consider the merits based on a state procedural rule that is independent and adequate.   *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   To avoid a default, the claimant must show:

- cause and prejudice or

- a fundamental miscarriage of justice.

*See id.*

The Petitioner did not raise the claim on direct appeal.   (*See* Br. of Pet'r on Cert. Appeal *passim*.)   And, when Mr. Cleveland filed his first application for post-conviction relief, he again omitted the claim.   (*See* Appl. for Post-Conviction Relief *passim*.)

The claim was first raised in the state habeas petition.   (*See* Appl. for Writ of Habeas Corpus 8-12.)   The state district court determined that the Petitioner had waived the conflict-of-interest claim, noting that he had failed to raise the issue on direct appeal or in the first application for post-conviction relief.   (*See* Order Den. Pet. for Writ of Habeas Corpus 1-2 (Okfuskee Co. Dist Ct. Nov. 4, 2011).)

The Petitioner then sought habeas relief in the state appeals court.   The court denied the Petitioner's request, finding that the state habeas remedy was unavailable because the

conviction had not been overturned.  (*See* Order Den. Pet. for Writ of Habeas Corpus 2 (Okla. Crim. App. Jan. 9, 2012).)

If the Petitioner were to raise the claim in state court at this point, he would need to do so through a post-conviction application.  If he were to file such a document, however, the state appeals court would regard the claim as waived because it had been omitted in the earlier round of post-conviction proceedings.  *See* Okla. Stat. tit. 22 § 1086 (all grounds for post-conviction relief must be raised in the initial application).  Thus, the claim would be subject to an anticipatory procedural default.[11]

The Petitioner has not suggested cause or prejudice as a basis to avoid the anticipatory procedural default.  *See supra* p. 12.

Mr. Cleveland suggests that application of a procedural bar would entail a fundamental miscarriage of justice.  According to Mr. Cleveland, the state appeals court granted certiorari and allowed his codefendant wife to withdraw her plea based on counsel's conflict of interest.  Therefore, the Petitioner claims that a refusal to address the merits would lead to a fundamental miscarriage of justice.

A miscarriage of justice arises only when the petitioner is able to show actual innocence.  *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).  To satisfy this burden, the Petitioner must show that it is more likely than not that no reasonable juror would have found

---

[11]     *See Thacker v. Workman*, 678 F.3d 820, 841 (10th Cir. 2012) (applying the doctrine of "anticipatory procedural bar" to unexhausted federal habeas claim when the claim would be procedurally barred under Oklahoma law pursuant to Okla. Stat. tit. 22 § 1086).

him guilty in light of the new evidence of innocence.  *See Schlup v. Delo*, 513 U.S. 298, 327 (1995).

In state court, Mr. Cleveland made only cursory claims of innocence.  In his motion to withdraw the plea, for example, he alleged that he was "actually innocent of the offense" but provided no further allegations.  (*See* R. at 546.)  At the hearing on his motion to withdraw plea, the Petitioner testified that he was not guilty because he had not used excessive force.  (Mot. Tr. at 8-9.)  The Petitioner's testimony suggested only a factual dispute on the excessiveness of the force.  And the Petitioner makes no further allegations that would support a claim of actual innocence.

In his reply, Mr. Cleveland submits unsworn statements from the two girls (MT and TT) who were allegedly abused.  The new statements recant parts of what they had said earlier.  (*See* Pet'r's Obj. Reply to Resp't's Resp. to Am. Pet. for Writ of Habeas Corpus, Ex. B-C.)

When a person testifies one way under oath and recants that account, courts generally are suspicious about the recantation.[12]  Thus, courts generally don't permit a person to refute sworn testimony with an "unsworn repudiation of that testimony."  *United States v. Pearson*, 203 F.3d 1243, 1275 (10th Cir. 2000) (citation omitted).

---

[12]     The Tenth Circuit Court of Appeals has stated: "Recantation of testimony given under oath at trial is not looked upon with favor.  Indeed, such is generally looked upon with downright suspicion."  *United States v. Ahern*, 612 F.2d 507, 509 (10th Cir. 1980) (citation omitted); *see also United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir. 1984) ("We are mindful that recanted testimony is properly viewed with suspicion . . . ." (citation omitted)).

This principle applies here.  The charge involves abuse involving girls, who were five- and six-years-old at the time.  One of the children testified at the preliminary hearing, stating that Mr. Cleveland had created bruises by whipping her with a belt. (Prelim. Hr'g Tr. 7, 10, 12.)  A crime-scene investigator took photographs of the other girl and testified that they had shown contusions to the face, arm, and back.  (*Id.* at 13-15.)[13]  In addition, a forensic interviewer testified that she had interviewed both children separately and that both said that Mr. Cleveland had whipped them with a belt and given them bruises.  (*Id.* at 23-24, 27, 30.)

Against the backdrop of this testimony, the Court must ask:  Did the two unsworn statements make it more likely than not that no reasonable juror would have found the wilful or malicious infliction of injury on one or both girls?  *See supra* pp. 13-14.  This question should be answered *no*.  Even if the two girls had retracted their prior accounts, a reasonable juror could have legitimately believed the prior versions.  One was given by MT at the preliminary hearing, where she testified that Mr. Cleveland had whipped her with a belt and given her bruises.  *See supra* p. 15.  Both girls also told a forensic interviewer that they had been beaten by Mr. Cleveland.  *See supra* p. 15.

The two unsworn statements do not account for the incriminating statements to the forensic interviewer or explain how TT could have suffered the contusions on her face, arm, and back.

A reasonable juror could also question the truthfulness of the two unsworn statements.

---

[13]    The State presented photographs of both girls at the preliminary hearing. (Prelim. Hr'g Tr. 15-16.)  However, the habeas record does not include these photographs.

MT's new statement primarily addresses the innocence of her mother — not Mr. Cleveland.  The girl does say that someone named "McKinney" had told the girls to lie. (Pet'r's Obj. Reply to Resp't's Resp. to Am. Pet. for Writ of Habeas Corpus, Ex. B.)  But, MT does not say who "McKinney" is.  And, she does not say whether she had been coached by McKinney before she had given the incriminating account to the forensic interviewer. (*See id.*)

TT says in her unsworn statement that Mr. Cleveland would never hurt her.  (*Id.*, Exh. C.)  She then states that she misses her father and wishes that she could have her "family & fun time back."  (*Id.*)  A reasonable juror could discount TT's new account based on suspicion that she simply missed her family and wanted to be reunited with her parents and siblings.

The two new statements do not make it more likely than not that no reasonable juror could find guilt.  As a result, the Court should reject Mr. Cleveland's theory of actual innocence as a way to avoid the procedural default.

V.  Ground Three:  Ineffective Assistance of Trial Counsel

In Ground Three, the Petitioner alleges ineffective assistance of trial counsel in the course of the plea proceedings based on:  (1) inaccurate advice that a nolo contendere plea would help him get his children back, (2) trial counsel's lack of knowledge about whether the crime had been subject to the "85% rule," and (3) the attorney's failure to identify the elements of the offenses.  These claims are invalid.

A.    <u>Advice About the Effect on Future Proceedings to Regain Parental Rights</u>

The Petitioner complains that his trial counsel was ineffective by advising him that a nolo plea would help in future efforts to regain his parental rights.  The Petitioner appears to assume that this advice was wrong, but does not say why.  *See supra* pp. 7-8.  By pleading nolo contendere in exchange for a deferred sentence, Mr. Cleveland had an opportunity to avoid a conviction for child abuse.  He lost that opportunity when the court found that he had committed perjury during the period of time that he was on a deferred sentence.  But the attorney obviously had no way of knowing that Mr. Cleveland would later commit a crime that would result in acceleration of the sentence.

When the attorney allegedly encouraged a no-contest plea, he could reasonably have regarded the prosecutor's agreement to recommend a deferred sentence as a benefit in future efforts to reacquire parental rights.  In these circumstances, Mr. Cleveland has not shown by a preponderance of the evidence that the legal representation was deficient even if the attorney had encouraged a no-contest plea based on the potential benefit in future efforts to regain parental rights.

B.    <u>Counsel's Lack of Knowledge About the Applicability of the 85% Rule</u>

Mr. Cleveland argues that his attorney should have shown greater knowledge about the applicability of the 85% rule.  His allegations are internally inconsistent.  In the amended petition, for example, Mr. Cleveland alleges that he had asked his attorney if the crimes were subject to the 85% rule and the lawyer replied that he didn't think so but would look into it.  (Am. Pet. 6.)  In the reply brief, however, Mr. Cleveland states that his attorney had flatly

17

denied the applicability of the 85% rule.  (Pet'r's Obj. Reply to Resp't's Resp. to Am. Pet. for Writ of Habeas Corpus 4.)

The state appeals court rejected Mr. Cleveland's claim of ineffective assistance. (*Cleveland v. State*, Case No. C-2009-1034, slip op. at 3 (Okla. Crim. App. Dec. 2, 2010) (unpublished op.).)  But at the time, Mr. Cleveland had based the claim solely on his attorney's advice that a nolo plea would help him regain custody of his children.  (Br. of Pet'r on Cert. Appeal 8-10.)  As a result, the state appeals court did not address the theories of ineffective assistance based on the attorney's supposed ignorance about the 85% rule or his failure to identify the elements of child abuse.  For the sake of argument, the Court can assume that it should apply its independent judgment to each part of the ineffective assistance claim.  *See supra* p. 2.  Even with this assumption, the claim would fail.

The Court's threshold task is to identify the standard.  This standard involves two elements, deficient representation and prejudice.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  When ineffective assistance is based on advice about a plea, prejudice exists only if the client would probably have insisted on a trial with better representation. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

The Petitioner's allegations do not indicate a probability of a different plea with better advice from his attorney about the 85% rule.

Whatever the attorney might have thought, the prosecutor knew the 85% rule applied and told the judge so in Mr. Cleveland's presence. (Tr. of Pleas of Nolo Contendere 4.) The judge then told Mr. Cleveland that the 85% rule applied and meant that he would need to serve 85% of the sentence if his deferred term were to be accelerated. (*Id.* at 4-5.) With that explanation, the judge asked Mr. Cleveland if he understood and he answered that he did. (*Id.* at 5.)

This acknowledgment prevents a finding of prejudice based on defense counsel's alleged uncertainty about the 85% rule. The prosecutor knew the rule applied; she told the judge, who then explained the rule to Mr. Cleveland; and he said he understood. With that statement, Mr. Cleveland has failed to show the probability of a different plea with better information from his attorney on the 85% rule. Thus, the ineffective assistance claim is invalid on the merits.

C.   <u>Counsel's Failure to Identify the Elements of the Offense</u>

Mr. Cleveland alleges in part that his attorney should have identified the elements of child abuse. However, as discussed above, he has not shown a failure to supply notice of the elements. *See supra* pp. 8-11. The failure to make that showing is fatal to the ineffective assistance claim, and the Petitioner has not shown by a preponderance of the evidence that he would probably have insisted on a trial if his attorney had discussed the elements of child abuse. This claim should be rejected.

VI.     Ground Five:  Factual Basis for the Plea

In his fifth ground for relief, Mr. Cleveland alleges the lack of a factual basis for the plea.  The state appellate court rejected the claim, stating that "the trial court [had] correctly found an adequate factual basis" for the pleas.  (*Cleveland v. State*, Case No. C-2009-1034, slip op. at 3 (Okla. Crim. App. Dec. 2, 2010) (unpublished op.).)  This determination entailed a reasonable application of Supreme Court precedent and the evidence.

The Supreme Court has never held that the constitution requires a factual basis before someone pleads nolo contendere.  In an unpublished opinion, the Tenth Circuit Court of Appeals has held that the claim is not cognizable in habeas proceedings because of the absence of a constitutional requirement for a factual basis on a no-contest plea.  *Green v. Koerner*, 312 F. App'x 105, 108 (10th Cir. 2009).  Here the Court need not decide whether a factual basis is required under the constitution.  Even if a factual basis were constitutionally required, the federal district court could not regard the right as clearly established without a Supreme Court decision on the issue.  *See supra* p. 3.

The claim would fail even if the Supreme Court had recognized a constitutional requirement for a factual basis.  On appeal, the state's highest criminal court held that a factual basis existed for the plea.  (*Cleveland v. State*, Case No. C-2009-1034, slip op. at 3 (Okla. Crim. App. Dec. 2, 2010) (unpublished op.).)

This determination was reasonable under the evidence.  As discussed above, the elements involved a wilful or malicious infliction of injury to a child under 18 years old.  *See supra* p. 10.  With the nolo plea, the prosecutor made an offer of proof:

> On or about November 11, 2003, the defendant, Mr. Cleveland, used excessive force on MT and TT who were 5 and 6 years old at the time.  Mr. Cleveland beat both girls with a belt & left severe bruising and/or lacerations on the children.  These acts occurred in Oklahoma County.

(Plea of Guilty and Summ. of Facts 5.)  The state appeals court could reasonably conclude that this offer of proof would have satisfied each element of child abuse.[14]  The reasonableness of that determination is fatal to the habeas claim.  *See supra* p. 2.

Ground Five is invalid, and the Court should reject this claim.

## RECOMMENDED RULING

The habeas petition should be denied.

## NOTICE OF THE RIGHT TO OBJECT

The Petitioner can object to this report and recommendation.  To do so, Mr. Cleveland must file an objection with the Clerk of this Court by October 8, 2012.  *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C.A. § 636(b)(1) (West 2011 supp.).  The failure to timely object would foreclose appellate review of the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[14]     *See Ligon v. State*, 712 P.2d 74, 75 (Okla. Crim. App. 1986) (holding that the state district court could reasonably find a factual basis for a nolo-contendere plea based on the prosecutor's offer-of-proof).

## STATUS OF THE REFERRAL

The referral is discharged.

Entered this 21st day of September, 2012.


Robert E. Bacharach
United States Magistrate Judge